TAX COURT OF NEW JERSEY



**MICHAEL J. DUFFY**
**JUDGE**

Dr. Martin Luther King Jr. Justice Building
495 MLK Boulevard, 4th Floor
Newark, New Jersey 07102-0690
(609) 815-2922  Ext. 54580

August 11, 2026

Nizar Tellawy
6 Nicholas Drive
Kinnelon, NJ  07405
*Pro Se Plaintiff*

Brian T. Giblin, Esq.
Giblin & Gannaio, LLC
2 Forest Avenue #200
Oradell, NJ  07649
*Attorney for Defendant*

Re:     <u>Nizar Tellawy v. Kinnelon Borough</u>
        Docket No. 001081-2024

Dear Mr. Tellawy and Mr. Giblin:

This letter shall constitute the court's opinion following trial in the above matter. Plaintiff challenges a 12-month added assessment, for tax year 2023, on his single-family residence.  After a two-day trial, the court finds that there is insufficient data in the record to determine the market value of the property and upholds the imposition of an added assessment. However, the court finds that the improvements were completed on April 20, 2023, and therefore, will adjust the added assessment to reflect a prorated 8-month period, pursuant to N.J.S.A. 54:4-63.3.

## I.     <u>INTRODUCTION</u>

Nizar Tellawy ("Plaintiff") is the owner of the single-family residence located at 6 Nicholas Drive, Kinnelon Borough, Morris County. The property is identified on defendant Kinnelon Borough's ("Kinnelon") tax map as Block 23201, Lot 134 (the "subject property").


Interpreter


ADA
Americans with
Disabilities Act


ENSURING
AN OPEN DOOR TO
JUSTICE



Nizar Tellawy v. Kinnelon Borough
Docket No. 001081-2024

The subject property, which was under construction, was initially assessed on October 1, 2022, for tax year 2023, as follows:

| | |
|---|---|
| Land: | $191,100.00 |
| Improvements: | $300,000.00 |
| Total | $491,100.00 |

On September 29, 2023, Kinnelon's assessor subsequently imposed an added assessment on the subject property in the amount of $621,500 for tax year 2023, which was prorated for 12 months. Plaintiff filed an appeal with the Morris County Board of Taxation ("Board"). On December 21, 2023, the Board affirmed the added assessment. Plaintiff appealed the judgment of the Board to the Tax Court.[1] Kinnelon did not file an answer or counterclaim.

For tax year 2023, Kinnelon's average ratio of assessed to true value, commonly referred to as the Chapter 123 ratio, is 93.58% with an upper limit of 107.62% and lower limit of 79.54%. See N.J.S.A. 54:1-35a(a). When the average ratio is applied to the subject property's 2023 tax year total assessment of $1,112,600, it has an implied equalized value of $1,188,929.

The matter was tried to conclusion over two days. During trial, Plaintiff, a self-represented litigant, offered testimony and submitted comparable sales information on nine single-family residences sold in Kinnelon. The court ultimately excluded one of the comparable sales.[2] In addition, Plaintiff submitted street-level photographs for three additional properties on his block.

---

[1] On July 24, 2024, the court entered an order to show cause why the Complaint should not be dismissed as untimely. In an order, dated September 27, 2024, the court concluded that this action is timely since Plaintiff established that a copy of the Complaint was e-mailed to the Tax Court Management Office on February 2, 2024.

[2] Plaintiff offered as a comparable the April 2021 sale of 50 South Glen Road in Kinnelon (P-5). Kinnelon objected to its use as an impermissible private sale. Plaintiff was given an opportunity to respond but failed to offer any rebuttal. As a result, the court excluded the sale.

In response, Kinnelon offered testimony from a State of New Jersey certified residential real estate appraiser, who was accepted by the court as an expert in the property valuation field ("appraiser"). Kinnelon's appraiser prepared an appraisal report ("appraisal report") dated February 10, 2025, containing comparable sales information on five single-family residences sold in Kinnelon.

Following the closure of the trial record on the issue of valuation, the court reopened the record for the limited purpose of determining the date of completion of the improvements. The court heard testimony from Plaintiff and Kinnelon's assessor and received additional exhibits into evidence.

The subject property is a 2-story colonial, with a contemporary flair, single-family residence that is situated on a 2.096-acre irregular-shaped lot. The interior and exterior photographs of the subject property depict a newly constructed single-family residence containing lower quality finishings.[3] The home possesses 4,199 square feet of gross living area consisting of 9 rooms including 4 bedrooms, 4 full bathrooms, a 3-car garage, and an unfinished basement.[4] From photographs, it appears that the first floor of the home features a kitchen, living room, dining room, den, and full bathroom. The second floor of the home includes a laundry room, finished room above the garage, 3 full bathrooms, and 4 bedrooms including the primary bedroom. The subject property's kitchen is noted to have low-quality cabinets. The home features a faux

---

[3] The tile flooring is not level and was installed with poor workmanship, with grout chipping in large sections.

[4] The appraiser testified as to disparities between his inspection and the property record card. For example, the room above the garage was finished despite the building plan identifying the space as unfinished, which added approximately 336 square feet to the subject property. At trial, Plaintiff agreed with this adjustment.

3

fireplace. The primary bathroom includes a portable jacuzzi. In addition, the subject property has a deck and a patio but has minimal landscaping.

The subject property is in the southwest corner of Kinnelon within the Estate at Kinnelon development. It is on the upper side of the development and along a short cul-de-sac comprised of nine building lots. Eight of these lots have been developed. The homes in this development are mostly custom designed and well maintained.

The subject property is zoned A - Residential. The subject property's use as a single-family home is legally permitted and conforming use.

## II.  ADDED ASSESSMENT

All real property must be valued as of October 1 of the pre-tax year. N.J.S.A. 54:4-23. There are three additional types of assessments: added assessments, omitted assessments and omitted added assessments. An added assessment "is intended to capture any increase in value that occurs as a consequence of the completion of the erection, addition to or improvement of any building or structure after the October 1 valuation date for a particular tax year." Arsenis v. Borough of Bernardsville, 476 N.J. Super. 195, 207 (App. Div. 2023).[5]

An added assessment may be imposed under one of two statutes. The first statute, N.J.S.A. 54:4-63.2, permits an added assessment when a structure has been erected, added to or improved after the October 1 valuation date and completed before the January 1 of the tax year. In such a case, the assessor makes a pro-rated added assessment for the remainder of the pre-tax year (from the first day of the month following completion through December 31) and an added

---

[5] For an appeal of an added assessment, the court must determine "the taxable value of the property as completed (land and improvements combined) and then subtract the existing assessment (making any necessary ratio adjustments)." New Jersey Foreign Trade Zone Venture v. Mount Olive Twp., 10 N.J. Tax 330, 333 (Tax 1989), aff'd, 242 N.J. Super. 170 (App. Div. 1990).

assessment for the entire tax year (i.e., subsequent year). Ibid. The second statute, N.J.S.A. 54:4-63.3, permits an added assessment where a structure has been erected, added to or improved after the October 1 valuation date and completed between January 1 and October 1 of the tax year. In such a case, the added assessment is prorated for the remainder of the tax year, beginning the first day of the month following completion. Ibid.

For purposes of the added assessment law, "completed" means "substantially ready for the use for which it was intended." N.J.S.A. 54:4-63.1. Our courts have adopted two tests to determine when a building or structure is substantially ready for its intended use. The economic viability test requires the court to discern whether the construction has "reached the point where an economically viable structure" exists. Beranto v. City of Passaic, 1 N.J. Tax 344, 349 (Tax 1980). The functional test centers on whether the building or structure could be used for its intended purpose. Litton Business Sys., Inc. v. Borough of Morris Plains, 8 N.J. Tax 520, 538 (Tax 1986), aff'd, 9 N.J. Tax 651 (App. Div. 1988). Moreover, "qualification of a building for a certificate of occupancy is not per se determinative of the building's readiness for occupancy within the meaning of the taxing statute." Beranto, 1 N.J. Tax at 349. The "failure to qualify for a certificate of occupancy is only one of several circumstances to be considered." Ibid.

The parties dispute the date of completion of the improvements. Kinnelon's assessor maintains that the parties previously agreed that the date of completion was December 31, 2022.[6]

---

[6] On or about November 28, 2023, Kinnelon petitioned the Board to vacate a 2022 added assessment assessed against the subject property. An unsigned copy of Kinnelon's petition recites as the reason for appeal: "evidence shows dwelling was not to be finished prior to 12/31/2022." The petition also identifies the date of completion as "12/31/2022." The petition, however, does not establish that Plaintiff adopted the recited date of completion. The subsequent stipulation of settlement is silent as to the date of completion.

Plaintiff denies that there was any prior agreement and asserts that the date of completion was April 20, 2023, the date the certificate of occupancy was issued.

Kinnelon's assessor testified that he initially learned of the permit for the certificate of occupancy in April 2023 and that, based on his research at the time, it appeared that the improvements were substantially completed for their intended use "possibly in '22 – '23." While the court finds the assessor credible, his testimony is of limited probative value. The assessor's own testimony confirms that he was unable to establish an exact completion date. Moreover, the court is unable to ascertain from the record if there ever was an actual meeting of the minds between Plaintiff and the assessor as to the completion date.

Kinnelon also offered into evidence a document entitled "Inspection History" for the subject property. The document shows that the subject property failed the final fire and electrical inspections on January 17, 2023, and subsequently passed the inspections on March 16, 2023. There is no evidence in the trial record as to the reason(s) the subject property failed the inspections. Plaintiff, however, provided photographs of additional drywall that was delivered in April 2023. The photographs, date-stamped April 3, 2023, show approximately 60 sheets of drywall, each 4-feet by 8-feet. Plaintiff testified that it took nineteen (19) days to install the new drywall. On cross-examination, Plaintiff conceded that much of that drywall was used in the basement.

The inspection history and drywall photographs are not determinative evidence of the subject property's completion date. Based on the record herein, the court finds that the certificate of occupancy, dated April 20, 2023, is the best evidence of the date when the improvements were completed and substantially ready for its intended use. Accordingly, the 2023 added assessment

shall be modified and pro-rated for only eight (8) months beginning May 1, 2023, pursuant to N.J.S.A. 54:4-63.3.

III.     **VALUATION**

A.  Highest and Best Use

"For local property tax purposes, property must be valued at its highest and best use." Entenmann's Inc. v. Totowa Borough, 18 N.J. Tax 540, 545 (Tax 2000). The highest and best use analysis involves the "sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive." Clemente v. South Hackensack Twp., 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015).

Based on the trial testimony of Plaintiff and the appraiser, the court finds that the highest and best use of the subject property is its current use as a single-family residential.

B.  Sales Comparison Method

New Jersey courts recognize "three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date . . . the comparable sales method, capitalization of income and cost." Brown v. Glen Rock Borough, 19 N.J. Tax 366, 376 (App. Div. 2001). "The comparable sales approach is generally accepted as an appropriate method of estimating the value of a single family residence." Elrabie v. Franklin Lakes Borough, 24 N.J. Tax 158, 176 (Tax 2008).

The sales comparison method is a "set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison, and making adjustments to the sale prices of the comparables based on the elements of comparison." Ibid. (quoting Appraisal

Institute, The Appraisal of Real Estate, 417 (12th ed. 2001)). It is regarded "as the most significant and consistently reliable valuation method when properly developed from an adequate sample of market data." State of New Jersey, Division of Taxation, Real Property Appraisal Manual for New Jersey Assessors 99 (2021) (emphasis added).

Both parties relied on the sales comparison approach.[7] The court finds that the sales comparison approach is the most appropriate method to determine the subject property's fair market value.

### C. Plaintiff's Comparable Sales

Plaintiff relied on an aerial photograph taken by Google and the property record card for each of the eight comparables.[8] According to Plaintiff, each comparable was within 3 miles of the subject property. Plaintiff testified that he received the sales price for each comparable by

---

[7] The appraiser did not utilize the cost approach due to the lack of comparable land sales and difficulty in establishing an accurate rate for all the forms of depreciation that affect residential property.

[8] At trial, Kinnelon objected to Plaintiff's comparable sales 1 through 5 as too distant from the date of valuation (October 1, 2022) and, thus, wholly irrelevant. See N.J.R.E. 401. The court overruled the objection. In this instance, the court will weigh, rather than exclude, the comparables.

Kinnelon also objected to Plaintiff's comparable sales 6 and 7 since those houses were a contemporary style, whereas the subject property was a colonial (with a contemporary flair). Plaintiff maintains that his house is also a contemporary. At trial, the court reserved its decision on the objection. The court will weigh, rather than exclude, the comparables since the subject property exhibits both colonial and contemporary features.

For Plaintiff's comparable sale 8, Kinnelon objected to the use of the comparable as the sale occurred at a time when the property was subject to the Freeze Act, N.J.S.A. 54:3-26. The court is unpersuaded because the Freeze Act impacts the assessment and unlikely impacts the sale/purchase price of that property, thus the property can be a valid comparable as long it meets other requirements (such as it being at arms-length transaction).

requesting the same from the real estate agent.  Plaintiff later testified that he confirmed the sale

transactions from a government website.

| Plaintiff's Comparable | # 1 (P-2) | # 2 (P-3) | # 3 (P-4) | # 4 (P-6) | # 5 (P-7) |
|---|---|---|---|---|---|
| Location | 9 Andrew Ln. Kinnelon, NJ | 12 Mica Dr. Kinnelon, NJ | 23 S Glen Rd. Kinnelon, NJ | 16 Mica Dr. Kinnelon, NJ | 188 S Glen Rd. Kinnelon, NJ |
| Sales Date | 6/15/2020 | 4/2/2021 | 4/15/2021 | 11/23/2020 | 4/15/2021 |
| Sales Price | $1,045,000 | $775,000 | $850,000 | $925,000 | $1,200,000 |
| G.L.A. | 5473 sq. ft. | 3947 sq. ft. | 4082 sq. ft. | 4890 sq. ft. | 5400 sq. ft. |
| Price/G.L.A. | $190.93/ sq. ft. | $196.35/ sq. ft. | $208.23/ sq. ft. | $189.16/ sq. ft. | $222.22/ sq. ft. |
| Rooms/Bed /Bath | 13 / 5 / 4 1/2 | 10 / 5 / 3 1/2 | 9/ 5/ 3 (full) & 2 (1/2 bath) | 12 / 4 / 4 1/2 | 12 / 5 / 5 1/2 |
| Lot Size | 3.87 acres | 2.10 acres | 1.40 acres | 1.82 acres | 1.82 acres |
| Built | 2006 | 1988 | 1988 | 1997 | 2005 |
| Basement | unfinished | 630 sq. ft. finished | Finished | 300 sq. ft. finished | 2500 sq. ft. Finished |
| Garage | 3 cars | 3 cars | 320 sq. ft. | 3 cars | 781 sq. ft. |

| Plaintiff's Comparable | # 6 (P-11) | # 7 (P-13) | # 8 (P-14) |
|---|---|---|---|
| Location | 8 Mica Dr. Kinnelon, NJ | 55 S. Glen Rd. Kinnelon, NJ | 123 S. Glen Rd. Kinnelon, NJ |
| Sales Date | 11/3/2022 | 5/31/2022 | 12/21/2021 |
| Sales Price | $899,000 | $850,000 | $885,000 |
| G.L.A. | 4258 sq. ft. | 4853 sq. ft. | 3945 sq. ft. |
| Price/G.L.A. | $211.13/ sq. ft. | $175.15/ sq. ft. | $224.33 / sq. ft. |
| Rooms/Bed /Bath | 10 / 4 / 2 1/2 | 10 / 4 / 4 1/2 | 10 / 4 / 3 1/2 |
| Lot Size | 2.13 acres | 1.38 acres | 1.47 acres |
| Built | 1988 | 1993 | 2002 |
| Basement | Unfinished | 1940 sq. ft. | unfinished |
| Garage | 3 car | 3 car | 3 car |

Plaintiff argued that comparable sale 2 was most like the subject property, whereas comparable sales 1 and 5 are the largest homes in the community.[9]  Plaintiff offered no photographs of the interior of any comparable sales.  Similarly, Plaintiff offered generic evidence as to the quality and condition of the properties.[10]  Based on his comparable sales, Plaintiff argues that the fair market value of his property should be ($222 per square foot x 4,199 sq. ft.) $932,178.

D.  Presumption of Correctness and Involuntary Dismissal

At the conclusion of the Plaintiff's case-in-chief, Kinnelon moved for involuntary dismissal under R. 4:37-2(b).  Kinnelon argued that Plaintiff's evidence cannot establish value and that his selection of comparable sales was flawed, since Plaintiff simply compared sales price to assessment in order to determine comparability.

A municipality's tax assessment is entitled to a presumption of correctness. Pantasote Co. v. Passaic, 100 N.J. 408, 412 (1985).  The taxpayer has the burden to present sufficient competent evidence to overcome the presumption and to establish a debatable question as to the validity of the assessment.  Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952). Such evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."  Ibid.  If the taxpayer cannot meet its initial burden, then the assessment must be affirmed.

---

[9]  Plaintiff also offered street-level photographs of the subject property (D-12) and three other properties on his street: 5 Nicholas Drive (P-8); 9 Nicholas Drive (P-9) and 15 Nicholas Drive (P-10).  Plaintiff asserts that the photographs clearly demonstrate that the subject property is inferior to the other properties on the block, but an exterior photograph alone provides insufficient evidence as to valuation.

[10]  With the exception of Plaintiff's comparable 6 which is described as "good," the property record cards described the condition of Plaintiff's other comparables as "normal."  The property record cards also identified certain amenities and associated square footage, including whether the property has a fireplace, porch, deck, shed, whirlpool tub, concrete or vinyl pool.

In determining whether the presumption has been overcome under R. 437-2(b), the court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. MSGW Real Estate Fund, LLC v. Mountain Lakes Borough, 18 N.J. Tax 364, 376 (Tax 1998); Marina Dist. Dev. Co., LLC v. City of Atlantic City, 27 N.J. Tax 469, 516 (Tax 2013), aff'd, 28 N.J. Tax 568 (App. Div. 2015). In the case of a motion for involuntary dismissal, the "trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

Only in those cases, where the taxpayer has overcome the presumption of correctness, is the Tax Court charged with consideration of the evidence adduced by the parties and deciding the matter based upon a preponderance of the evidence. Ford Motor Co. v. Edison, 127 N.J. 290, 312 (1992) (citing Pennwalt Corp. v. Twp. of Holmdel, 4 N.J. Tax 51, 55-56 (Tax 1982)). It is during this second stage that the court must "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982).

Plaintiff has presented eight comparable sales that occurred in Kinnelon between June 2020 and November 2022, with unadjusted prices between $775,000 to $1,200,000. The comparable properties are all large single-family residences ranging from 3,945 to 5,473 sq. ft. of gross living area. Plaintiff's proposed valuation of $932,000, based on a price of $222 per square foot, appears in range with the sales prices of Plaintiff's comparables sales 3, 6, 7 and 8.

At trial, the court denied Kinnelon's motion for involuntary dismissal. The court found that Plaintiff had produced cogent evidence sufficient to overcome the presumption of correctness,

when viewed under the favorable prism of R. 4:37-2(b). The court is now charged with weighing the evidence and deciding the true value of the subject property.

E. Kinnelon's Comparable Sales

Kinnelon's appraiser presented 5 comparable sales that occurred in Kinnelon between October 2021 and August 2022, with unadjusted prices between $982,500 and $1,325,000. The comparables are all large single-family residences with 3,442 to 4,619 sq. ft. of gross living area.

The appraiser identified the comparables on the Garden State Multi Listing Service and verified the data with the listing agent. He also did a visual inspection of the interior and exterior of the subject property and the neighborhood and viewed each comparable sale at least from the street. Kinnelon also offered testimony from its tax assessor.

| Kinnelon's Comparable | # 1 | # 2 | # 3 | # 4 | # 5 |
|---|---|---|---|---|---|
| Location | 1 San Filippo Kinnelon, NJ | 5 Nicholas Dr. Kinnelon, NJ | 71 South Glen Kinnelon, NJ | 9 Magdalena Kinnelon, NJ | 33 Pheasant Run Kinnelon, NJ |
| Sales Date | 10/27/2021 | 5/4/2022 | 6/28/2022 | 5/19/2022 | 8/17/22 |
| Sales Price | $1,200,000 | $1,300,000 | $982,500 | $1,250,000 | $1,325,000 |
| G.L.A. | 3,971 sq. ft. | 4,619 sq. ft. | 4,201 sq. ft. | 4,199 sq. ft. | 3,442 sq. ft. |
| Price/G.L.A. | $302.19 /sq. ft. | $281.45 /sq. ft. | $233.87 /sq. ft. | $297.69/ sq. ft. | $384.95/ sq. ft. |
| Rooms/ Bed/ Bath | 12 / 4 / 3 ½ | 12 / 5/ 4 ½ | 12 / 5 / 2 ½ | 10 / 5 / 3 ½ | 9 / 4 / 3 |
| Lot Size | 2.80 acres | 2.01 acres | 1.44 acres | 2.10 acres | 1.37 acres |
| Built | 17 years old | 16 years old | 26 years old | 26 years old | 34 years old |
| Basement | Full finish 2 rooms | Full finish 3 rooms 1 bath | Full finish 1 bath | Full finish 3 rooms 1 bath | Full finish 4 rooms 1 bath |
| Garage | 3 cars | 3 cars | 2 cars | 2 cars | 2 cars |
| Adjustment Percentage Adjusted sales price | 12.1% gross $1,098,500 | 10.5% gross $1,163,500 | 15.8% gross $1,000,000 | 14.9% gross $1,241,000 | 22.3% gross $1,343,250 |

Relevant here, the appraiser recognized that the quality of the construction and furnishings of the subject property is of a lower quality than typical for the development. The appraisal report notes:

>The majority of the flooring throughout is tile with the appearance of hardwood. The tile is not level and was installed with poor workmanship. Most of the grout was chipping with large sections missing. The kitchen cabinets are also of low quality. The heating is via 1 HVAC unit. One additional ductless unit was added into the den on the 1st floor. Several space heaters were in use.
>
>The typical quality of construction for the majority of the homes within this development are of higher quality.

The appraiser ultimately concluded that the quality of construction for the subject property is inferior, whereas each of his comparable properties is described as good. To account for this inferior quality, the appraiser adjusted downward the value of each of the comparable sales by 5% of its sales price.[11]

The appraiser also made the following physical property adjustments to the comparables: (i) $19,000 per acre for surplus land; (ii) $75 per sq. ft. of gross livable area; (iii) $10,000 for 3 fixture bath and $5,000 for 2 fixture bath; (iv) $5,000 per finished basement room; (v) $10,000 per 1 car garage; (vi) $7,500 per fireplace and (vii) $25,000 for inground pool.

Finally, the appraiser adjusted his comparables 3, 4 and 5 upward by 5% of the sales price to account for the age of the improvements. The appraiser testified that his adjustments were taken from the Marshall & Swift cost manual but conceded that his appraisal report did not reference the cost manual. With adjustments, the adjusted sales price for the comparables ranged from $1,000,000 to $1,343,250.

At trial, the appraiser opined that his comparable 2 is the most comparable property, notwithstanding his belief comparable 2 is superior in quality and has a superior finished basement

---

[11] In the appraisal report, the appraiser acknowledged that there is a lack of sales of homes in similar condition in the market area.

when compared to the subject property.[12]   With adjustments, including the 5% quality of construction adjustment, the appraiser opined that comparable 2 was worth $1,163,500. Ultimately, the appraiser concluded that the value of the subject property was $1,100,000 or ($261.97 per sq. ft.).

F.   Valuation Analysis

The court must weigh and evaluate all the evidence and determine whether either party has established, by the preponderance of the evidence, the true value of the subject property. Evidence which is sufficient to overcome the presumption of correctness, under the "rose-colored glasses" standard of R. 4:37-2(b), is not necessarily sufficient to carry the burden of proof when the evidence is subject to a critical analysis by the court. MSGW Real Estate Fund, 18 N.J. Tax at 379.

Plaintiff's evidence provides little assistance to the court in determining the true value of the subject property.   Plaintiff relies on unadjusted sales prices, aerial photographs and property tax record cards for each of his comparable sales.  However, as explained above, Plaintiff provided limited, generic evidence as to the quality and condition of his comparable sales.

Admittedly, the Tax Court has long held that litigants are not required to produce an expert witness or appraisal report.  Siegfried v. Holmdel Twp., 20 N.J. Tax 8, 18 (Tax 2002).  However, without the assistance of an appraiser, the Plaintiff was unable to offer credible valuation adjustments to the comparable properties to account for differences.  Without credible valuation adjustments, detailed testimony or helpful photographs, and furnishing only basic information on

---

[12]  Kinnelon's comparable 2 is located directly across the street from the subject property.

interior condition and amenities, Plaintiff's evidence does not assist the court in determining the true value of the subject property.

As detailed above, Kinnelon's expert relied on five comparable sales. His comparable sales 1 through 4 contain gross living areas ranging from 3,971 sq. ft. to 4,610 sq. ft. compared to the subject property's 4,199 sq. ft.[13] Based on the similarities of the properties, the court finds Kinnelon's comparable 3 and 4 are the most credible and reliable evidence of the subject property's true market value. Comparable 3 was just two square feet larger than the subject property and sold for $982,500 on June 28, 2022. Comparable 4 has the same gross livable area as the subject property and sold for $1,250,000 on May 19, 2022. The court, however, has concerns with the appraiser's adjustments.

For example, the appraiser applied a $75/per sq. ft. adjustment for gross living area, even though his comparables 1 through 4 sold between $233.87 and $297.69 per sq. ft. The court also questions the appraiser's 5% downward adjustment for quality of construction to the comparables in light of the sub-standard construction identified in the subject property: poorly installed, unlevel flooring with chipped grout; "low quality" kitchen cabinets and an ineffective heating system as evidenced by the placement of several space heaters. The expert offered no market derived support for his conclusions that a $75 per square foot gross living area adjustment or a 5% downward adjustment would appropriately account for the subject property's inferior construction quality.

---

[13] Kinnelon's comparable 5 is located in another development, Pheasant Run, whereas Kinnelon's other four comparable properties are within the same development as the subject property. In addition, Kinnelon's comparable 5 has the smallest gross living area (3,442 sq. ft.), yet the highest sales price per gross living area ($384.95/sq. ft.) and the highest gross adjustments to sales price (22.3%). For these reasons, the court finds that Kinnelon's comparable 5 is not a reliable indicator of the subject property's value, and therefore, attributes no weight to it.

An "opinion of an expert depends upon the facts and reasoning which form the basis of the opinion. Without explanation as to the basis, the opinion of the expert is entitled to little weight in this regard." Dworman v. Tinton Falls, 1 N.J. Tax 445, 458 (Tax 1980), aff'd, 180 N.J. Super. 366 (App. Div. 1981). In other words, an expert's opinion is only as good as the data upon which the expert relied." Greenblatt v. Englewood City, 26 N.J. Tax 41, 54-55 (Tax 2010). In this case, the appraiser failed to explain the "whys and wherefores" in arriving at the quantitative value for the gross living area, quality of construction and age adjustments. Without an explanation of the supporting methodology and assumptions used in arriving at these quantitative adjustments, the expert's opinion is of little assistance to the court in setting the market value for the subject property.

The court recognizes that it has a duty to apply its own judgment in order arrive at the true value of the subject property. Glenn Wall Assocs. v. Twp. of Wall, 99 N.J. 265, 280 (1985). In considering Plaintiff's comparable 6 and Kinnelon's comparable 3 and comparable 4, the court has a broad valuation range: $899,000, $982,500 and $1,250,000, respectively, based on unadjusted sale prices. The subject property's valuation is further complicated based on the need to account for property differences, including but not limited to, the quality of construction of the subject property and the age of the comparables: Plaintiff's comparable 6 (effective age 28 years); Kinnelon's comparable 3 (26 years) and Kinnelon's comparable 4 (26 years). As explained previously, the trial record does not contain reliable evidence to enable the court to make any such adjustments. See Twp. of Warren v. Suffness, 225 N.J. Super. 399, 413-14 (App. Div. 1988) (court cannot make adjustments without sufficient evidence in the record); U.S. Life Realty Corp. v. Jackson Twp., 9 N.J. Tax 66, 79 (Tax 1987) (court cannot "arbitrarily assign a value to the property not supported in the record").

For these reasons, the court finds that it has insufficient data to determine the market value of the subject property. "Where neither party carries the burden of proof of establishing the value, the original assessment should stand." New Jersey Foreign Trade Zone Venture, 242 N.J. Super. at 175.

CONCLUSION

For the reasons stated herein, the court affirms the subject property's added assessment valuation. In an accompanying order, the court will modify the added assessment to reflect an 8-month prorated added assessment, pursuant to N.J.S.A. 54:4-63.3.

/s/ Michael J. Duffy
Hon. Michael J. Duffy, J.T.C.